*O’Neall, J.
The first question made in this case, is as to ■the payment to the widow of George Keckley, deceased, of the L amount assessed in her favor, for dower, in another case in this Court, and directed to be paid out of the funds. The facts out of which the question arises seems to be, that George Keckley mortgaged his land to the Union Bank, and the Bank of the State; that his wife renounced her dower on these mortgages. Mr. Keckley, at his death, was found to be insolvent. On a bill against his executor, by his widow, a sum of money in lieu of dower, was assessed by the Commissioners under the writ of *196 admeasurement of dower; their return was confirmed, and the sum assigned was ordered to be paid out of the proceeds of the sale of Mr. Kecldey’s estate, ordered to be sold in this case, in which it had been previously ordered to advertise for creditors to come in, and that “the Commissioner shall thereupon marshal the assets of the estate, after deducting the amount which may be decreed to the widow as dower, setting forth the assets of the estate, and the amount and order in which the debts are payable.” Under this order the creditors have come in, and the Commissioner reports that he has paid, out of the sales, the mortgages, and has made a partial payment to the widow, on account of her dower. The personal estate was more than enough to pay the debts prior to the mortgages and the mortgagees. The funds, however, will not be sufficient to pay the dower and all the intestate debts. The widow is no party to this bill. She is, however, entitled, under the former decree, to receive her dower out of the assets in this case, and it might be difficult for the creditors in this case to entitle themselves to make the objection in this informal way to the widow’s claim of dower; but as the objection was at last rested on the impropriety of such an allowance being made to the widow, and the objections to the irregularities (if there were any) in the proceedings for the admeasurement of her dower, were not insisted on, and as a majority of the Court are very clearly of opinion that she is entitled to dower, we have concluded to consider the point, as if it was regularly made.
We are not advised of the form or manner in which the dower was renounced on the mortgages, but as no objection was made on account of any insufficiency in that respect, it is taken for granted that every thing was regular.
What is the effect of this renunciation of dower ? I think it is *clear that it cannot operate beyond the estate conveyed. It can- -* not have the effect of a perpetual and absolute bar. For the mortgage is, as against the mortgagor, only a lien. The renunciation can only have the effect to postpone the claim of dower to the satisfaction of that lien. The land then stands as a security for the payment of the debts secured by the mortgages, unincumbered by the wife’s rights. If the mortgages had been paid by the husband in his lifetime, the wife’s right of dower would have been restored. Does the fact of their payment after his death, in a regular course of administration, restore the wife’s right to dower ? The 36th section of the Act of 1189, P. L 494, directs that the debts due by any testator, or intestate, shall be paid, viz : 1st. Funeral and other expenses of the last sickness, and of administration. 2d. Debts due to the public. 3d. .Judgments, mortgages, and executions, the oldest first, &c. Under this provision, the mortgagees were entitled, in their order, to be paid out of the personal estate; and if they had attempted to collect their debts by a sale of the real estate under a decree of foreclosure, I think the widow would have been entitled to the application of the personal assets, in exoneration of the land; for the other creditors have no right, either in law or equity, to the aid of her dower for the payment of their debts. According to the common law, dower is preferred to purchasers or creditors. The latter are not prejudiced by allowing the dower: it neither increases nor diminishes the fund out of which they had a right to expect payment — the intestate’s real and personal estate ; for the widow’s dower is no part thereof. But I have *197 said that the renunciation of dower cannot have effect beyond the estate conveyed. When that ceases, the renunciation must also cease. The deed of a feme covert, executed under and agreeable to law, ought to be strictly construed, so as not to deprive her of any right beyond that actually conveyed. Here the legal effect of her renunciation must be controlled by the terms of the deed on which it is made, to which it has reference, and of which it is a part. That sets apart the land to secure the payment of a debt: the dower is forever renounced if the land is sold under the mortgage to pay that debt. . This makes the renunciation in the nature of a collateral mortgage. If the husband’s mortgage is not foreclosed, the wife is most clearly not barred of her dower ; she could demand it of any one except the mortgagee; and no one but the mortgagee could plead *her renunciation in bar to her demand. When r^9f-q the mortgage is paid off by the assets of the husband, none of his L creditors have any equity to set it up against the wife, for she has generally a prior equity to be allowed her dower; and in this case there is nothing to take it out of the general rule; for the legal effect of her renunciation is removed; and when that is done, she stands as if she had never renounced her dower. For unless she had received some beneficial interest by the mortgage, equity could not undertake to control the law. On examining such of the eases as I have been able to refer to, the principles which I have stated are fully sustained.
In Dolin v. Coltman, 1 Vern. 294, the wife joined her husband in a mortgage, and levied a fine to bar her dower; and in consideration thereof the husband agreed that she should have the redemption of the mortgage : he twice subsequently mortgaged the same estate. It was held that this agreement to redeem was fraudulent against the junior mortgages, but that the wife should have her dower, as she had renounced in the confidence of having the equity of redemption. This case shows that the renunciation of dower by the wife is not to have effect beyond her intent, as manifested by the consideration of the act done. Apply that principle to the ease before us : what was the consideration of her renunciation on the mortgages ? To secure the’ ultimate payment of the debts. It was the same as if she had said to the mortgagees, if you cannot be paid your debts but by a sale of the land, I will not claim dower out of it. If they could be otherwise paid, from the analogy of this last case, she could not be barred from her dower; for then the consideration of the renunciation ceased; and to give it an effect beyond, would be a fraud on her. In Titus v. Neilson, 5 J. Ch. Rep. 452, the husband and wife legally executed a mortgage of the land, and subsequently the husband alone executed another mortgage. On a bill filed by the first mortgagee against the husband and wife and the second mortgagee, for a foreclosure of his mortgage, pending the proceedings the husband died, the land was decreed to be sold, and after payment of the first mortgage, the question arose whether the second mortgagee should be entitled to the entire residue, or whether the widow was entitled to one-third thereof during her life, as and for her dower. Chancellor Kent held that the widow was entitled to her dower; and in delivering his judgment (at 451) he remarks, “when *the wife joined in the first mortgage, she only parted with her right of dower to the extent of that mortgage debt, and she would *- 04 have been entitled to have redeemed the mortgage upon her husband’s *198 death, for the sake of her dower, and to reinstate herself in all her rightsIf the wife, upon the death of her husband, may redeem the mortgage, and thus reinstate herself in all her rights, it follows (I think) that she has the right to have the mortgages paid out of the personal estate. For if she had redeemed, she would, against the heir, have been entitled to retain the land until- she had her dower assigned her, and was paid the mortgage debt, deducting her proportion as dowress. — 1 Eq. Ca. Ab. Tit. ; Dower and Joint. B. 6 ; 5 J. Ch. Rep. 491. Her contribution to the heir is one-third of the annual interest of the mortgage debt during life; thus showing that the mortgage debt, even in her hands, remains a charge upon the estate, and that her dower is preferred to all other claims where she has not renounced; or, if she has renounced conditionally, and the condition can be prevented from attaching. If the widow, in the case before us, had redeemed the land by paying off the mortgages, she would have been entitled to her dower, and also to have the mortgages paid to her. She wouid be also entitled to have that payment made out of the personal estate; for that is the primary fund for the payment of the debts, and as a mortgage creditor, she could only, in marshaling assets, have been compelled to exhaust the balance of the real estate after satisfying her dower, before resorting to the personal estate. That would be unnecessary to be done ; for if she was paid out of the personal estate, the other creditors would get the balance of the real estate after satisfying the dower, and thus she could not be asked to go upon the real estate to relieve the personal, as no benefit would result from such a proceeding. The effect of allowing her renunciation to be taken advantage of by other creditors, so as to exclude her from dower altogether, would be to give them an equity to be paid out of her dower, This they have not. For, by her renunciation to the mortgagees, in the language of Chancellor Kent, “ She only parted with the right of dower to the extent of the mortgage debts.” Allow it to operate to bar her dower when it is not necessary that it should have such an effect, for the satisfaction of the mortgages, and it will amount to an absolute and unconditional renunciation, which never was intended, and which is there-*9kk-i fore contrary to both law and *equity. In Hildreth v. Jones, 13 Mass. Reports, 525, the wife joined her husband in a mortgage, and after his death, in an application to the Judge of Probate, she stated that she was barred of her dower by the said mortgage deed, and prayed an allowance out of the personal estate, which was granted. The administrator afterwards paid the mortgage — it was held that she was entitled to her dower.
In Barker v. Parker, 17 Mass. Rep. 564, the land was mortgaged by husband and wife to Gerry, who assigned to Jeffries, by whom the laud was recovered in an action, and he entered into the possession under a “judgment of possession,” and so continued for some time, until John Henderson, who had been tenant under Barker, the original mortgagor, paid off the mortgage to Jeffries, who released to Henderson his right. Barker’s right to redeem was sold under execution, and purchased by Mackay, who conveyed to others, by whom it was conveyed to the defendants. It was held that the demandant was entitled to dower. Mr. Justice Putnam remarked, in delivering his judgment, “If no mortgage had been given, it would be agreed on all hands that the widow should *199 have dower. But the mortgage having been paid is to be considered as never having existed.” This dictum presents, I think, the' true view, that the moi’tgage being paid, is to be considered, so far as the wife’s dower is concerned, as never having existed, and hence no pretence can be made by which it can be set up as a bar to the wife’s right of dower. Both the eases cited show that payment is an absolute extinction of the mortgage, and the first that not even allowance out of the personal estate • for maintenance to the wife on the supposition that she was barred, could keep alive and in operation the wife’s renunciation of dower after the mortgage had been paid off.
In Pixley v. Bennet, 11 Mass. Repts. 298, the demandant, widow of Charles Pixley, demanded her dower of lands belonging to the husband during coverture : the tenants pleaded that she had released her dower : the demandant craved oyer of the writ, from which it appeared that she had released to Truze and Edwards. She therefore demurred to the plea, and her demurrer was sustained. Prom this decision it is apparent that a renunciation of dower cannot be taken advantage of by any one except the parties or his privies, to whom it is made. The creditors' could not, therefore, set up the renunciations of dower to mortgagees, as a *bar to the wife’s claim of dower out of the land mortgaged. It was said that the decree allowing the widow’s dower did not L make it a charge upon the land specifically, but upon the estate generally; and Stock and Parker, 2 McC. Oh. Rep. 316, was cited to show that this was incorrect; and if it was, as is supposed by the objection, there is no doubt from that case that it would be so. But the land is ordered to be sold in this case, and out of its proceeds the dower may be regarded to be decreed to be paid ; and as it sold for a sum greatly beyond the dower, and as no rights of creditors will be changed thereby, the Commissioner, in paying the dower, will not be in error in paying it out of the funds generally. From this examination of the question, I am satisfied that the decree, allowing the widow dower of the premises mortgaged was correct, and that the sum assessed in lieu of her dower must be paid by the Commissioner out of the proceeds of the sale of the estate of George Keekley, deceased, in this case.
2. Without undertaking to decide whether the debt due to the commissioners of the poor be a debt to the public, it will be sufficient to say that, conceding it to be so, it is not entitled to the preference claimed. According to the report of the Commissioner, and in the aspect in which the claimant wishes it to be considered, this debt is on a due-bill for a balance due by the deceased for poor tax received by him. The other debts are due by mortgages or judgments. i The case of the Commissioners of Public Accounts v. Greenwood, 1 Eq. Rep. 450, (decided in 1195, and never questioned,) denied the general common law prerogative right of the King to be paid in preference to his subjects, to have any application to the State. In the State v. Harris, 2 Bailey, 598, the same position was ruled. So that the right of the State to be paid in preference to other creditors, depends now altogether on the statute law.„ Under the Act of ’89, the question is, what debts to the public are entitled to be first paid. In the State v. Harris, I said that debts which are due to the State as a “ sovereign, and for the protection of both the citizen and property, are entitled to preference.” This definition was intended *200 to embrace the right of the State to be paid all taxes in preference to all other debts. But perhaps the words used in the Act of 1*189, ought to have a little more extended meaning, and to be construed by the common law. In the case of the Commissioners of Public Accounts v. Greenwood, the Judge says, “But even if the common law prerogative *257] was retained, yet we are of opinion it cannot affect the defendants in this case, because by the common law, the King was entitled to a preference only when the debt was on record or specialty, in cases where he and the subject stood in equal degree.” That the words “ debts due to the public,” must be construed to mean, that where the intestate is indebted to the State, and some of the citizens in equal degree, that in such case the State shall have the preference, is not only apparent from a construction of the Act by the common law, but the same conclusion is obtained by looking to the fact that any other construction would divest liens existing in the lifetime of the debtor, by judgments, executions and mortgages.
It appears that a judgment was obtained on the debt due to the Commissioners of the-Poor, in the name of John Kobinson; if that can be considered as judgment in favor of the State, (which I much doubt) it cannot alter the case, the Act of ’89 gives the oldest judgment the preference, and as this judgment is the youngest, it cannot be said to be in equal degree with the older ones. It is a debt of the same class, but it is not with the others equally entitled to payment. The case of Commissioners of Public Accounts v. Greenwood, is, however, an authority upon the point, and it is unnecessary to look beyond it. I am, therefore, satisfied that the Commissioners of the Poor are not entitled to the preference claimed.
It is ordered and decreed that Chancellor Johnson’s decree be affirmed.
Johnson, J., concurred.
Harper, J., I concur as the second point decided.